**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRAVIA CAPITAL HONG KONG LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>SL GREEN REALTY CORPORATION; 245 PARK MEMBER LLC; PALISADES MEMBER 1 LLC; PALISADES MEMBER 2 LLC; PALISADES TRAINING CENTER NY LLC; PALISADES FEE OWNER LLC; ANDREW S. LEVINE; AND HARRISON SITOMER,<br><br>Defendants. | ECF CASE<br><br>Civil Case No.: 1:24-cv-02296<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

SL Green Realty Corporation ("SL Green") committed theft in broad daylight. New York City's self-styled "largest owner of office real estate" knew that Bravia Capital Hong Kong Limited ("Bravia") would be able to enforce a judgment to collect on assets vested in SL Green's newly obtained subsidiaries. To ensure this did not happen, SL Green overtly abused the corporate form and created a new corporate silo to shelter the assets. Signing as **both** buyer and seller, SL Green's executive management transferred the Palisades Premier Conference Center—real property self-reported as worth **$12,400,000.00**—from one shell company to another for **$0.00: zero dollars and zero cents**. Bravia seeks relief for, among other things, this insider, fraudulent transfer, and would respectfully show as follows:

1

## I.    Parties

1.    Plaintiff Bravia is a corporation incorporated in Hong Kong with its principal place of business in Hong Kong.

2.    Defendant SL Green is a corporation incorporated in the State of Maryland with its principal place of business at One Vanderbilt Avenue, New York, NY 10017.

3.    Defendant 245 Park Member LLC ("245 Park") is a limited liability company formed in the State of Delaware with an office at c/o SL Green Realty Corp., One Vanderbilt Avenue, New York, NY 10017.

4.    Defendant Palisades Member 1 LLC ("Palisades Member 1") is a limited liability company formed in the State of Delaware with an office at c/o SL Green Realty Corp., One Vanderbilt Avenue, New York, NY 10017.  Palisades Member 1 was formerly known as HNA North America LLC.

5.    Defendant Palisades Member 2 LLC ("Judgment Debtor") is a limited liability company formed in the State of Delaware with an office at c/o SL Green Realty Corp., One Vanderbilt Avenue, New York, NY 10017.  Judgment Debtor was formerly known as HNA Group North America LLC.

6.    Defendant Palisades Training Center NY LLC ("Palisades Training Center") is a limited liability company formed in the State of Delaware with an office at c/o SL Green Realty Corp., One Vanderbilt Avenue, New York, NY 10017.

7.    Defendant Palisades Fee Owner LLC ("Palisades Fee Owner") is a limited liability company formed in the State of Delaware with an office at c/o SL Green Realty Corp., One Vanderbilt Avenue, New York, NY 10017.

8.    245 Park, Palisades Member 1, Judgment Debtor, Palisades Training Center, and

2

Palisades Fee Owner are collectively referred to as "Controlled Defendants."

9.    Defendant Andrew S. Levine is an individual who resides in New York and may be found at SL Green Realty Corp., One Vanderbilt Avenue, New York, NY 10017.

10.    Defendant Harrison Sitomer is an individual who resides in New York and may be found at SL Green Realty Corp., One Vanderbilt Avenue, New York, NY 10017.

## II.    Jurisdiction and Venue

11.    This Court has personal jurisdiction over all Defendants because they have purposefully availed themselves of the privileges of the laws of the State of New York.  Defendants regularly conduct and solicit business within the State of New York and this District.  Defendants are at home or reside in this State.  Also, Bravia's cause of action arose directly from Defendants' contacts, actions, and other activities in this State.

12.    Venue is proper in this District under at least 28 U.S.C. § 1391(b) because the acts and transactions constituting the violations alleged herein occurred in this District and some or all Defendants transact business in this District.

13.    This Court has subject-matter jurisdiction because of diversity of citizenship.

## III.    Factual Allegations

### A.  The Corporate Defendants' Corporate Structure

14.    SL Green is the 100% direct or indirect parent entity of 245 Park.

15.    245 Park is the direct parent entity of Palisades Member 1.

16.    Palisades Member 1 is the direct parent entity of Judgment Debtor.

17.    Judgment Debtor is the direct parent entity of Palisades Training Center.

18.    Palisades Fee Owner was created by SL Green and is a subsidiary thereof but is not owned directly or indirectly by Judgment Debtor.

19.    The graphic below illustrates the corporate structure of the corporate Defendants:



4

**B.  Summary:  Timeline of events.**

20.    The timeline on the next page presents a summary of key events, each detailed further in the subsequent allegations.

[remainder of page intentionally left blank]

**2011–2018**
Bravia and its affiliates provide services to HNA Group's affiliates. HNA Group fails to pay Bravia's fees.

**August 20, 2019**
Bravia, HNA Group, and Judgment Debtor (then an indirect subsidiary of HNA Group) execute a Payment and Indemnity Agreement and Unconditional Guarantee to resolve HNA Group's unpaid fees for Bravia and its affiliates' services. Under those agreements, Bravia was to be paid $10 million out of HNA Group's sale of Ingram Micro.

**April 8, 2021**
Bravia sues HNA Group and Judgment Debtor in NY Supreme Court after learning HNA Group was attempting to sell Ingram Micro without informing Bravia, breaching the Payment and Indemnity Agreement.

**July 2, 2021:**
Facing bankruptcy, HNA Group sells Ingram Micro for $7.2 billion. HNA Group and Judgment Debtor refuse to pay Bravia the $10 million it was owed from that sale, thereby again breaching their agreements with Bravia.

**May 20, 2022**
245 Park sues HNA Group (International) Company Limited, an indirect subsidiary of HNA Group and indirect parent of Judgment Debtor.

**August 26, 2022**
HNA Group and Judgment Debtor's first set of lawyers seek to withdraw from Bravia suit, delaying case. Case stayed until December 6, 2022.

**January 31, 2023**
NY Supreme Court enters default judgment against HNA Group.

**March 29, 2023**
Bravia moves for summary judgment against Judgment Debtor.

**May 19, 2023:**
This Court orders turnover of Judgment Debtor's immediate parent company to 245 Park. HNA Group (International) Company Limited appeals.

**June 8, 2023**
Bravia advises counsel for 245 Park (SL Green's subsidiary) that Bravia is a creditor of Judgment Debtor and that an illegitimate transfer of the Palisades Premier Conference Center (owned by Judgment Debtor's subsidiary) would be a fraudulent transfer.

**July 12, 2023**
Following an administrative stay from the Second Circuit, Judgment Debtor's parent company is turned over to 245 Park.

**July 13, 2023**
Bravia again advises counsel for 245 Park that siphoning away the Palisades Premier Conference Center from Judgment Debtor's corporate structure would be a fraudulent transfer.

**August 2, 2023**
Bravia again writes to counsel for 245 Park.

**August 21, 2023**
Judgment Debtor's second set of lawyers seek to withdraw from suit with Bravia three days before summary-judgment hearing date, further delaying case. Case stayed until November 17, 2023.

**September 22, 2023**
SL Green creates Palisades Fee Owner.

**October 31, 2023**
While Bravia's case was stayed, Andrew Levine (SL Green's Chief Legal Officer) transfers the Conference Center from Palisades Training Center to Palisades Fee Owner for $0.00, signing for buyer and seller.

**November 30, 2023**
NY Supreme Court finally hears oral argument on Bravia's motion for summary judgment against Judgment Debtor and grants Bravia's motion at the hearing.

**December 15, 2023**
NY Supreme Court enters judgment against Judgment Debtor in the amount of $12,986,660.70.

**January 26, 2024**
Judgment Debtor discloses in post-judgment discovery that it has no assets.

| Pre-2019 | 2019-2022 | 2023 | 2024 |
|---|---|---|---|

 **BRAVIA'S BUSINESS RELATIONSHIP AND LAWSUIT WITH HNA GROUP AND JUDGMENT DEBTOR**

● **245 PARK'S LAWSUIT AGAINST HNA GROUP SUBSIDIARY AND TURNOVER OF JUDGMENT DEBTOR'S PARENT**

● **SL GREEN'S FRAUDULENT TRANSFER**

CONFIDENTIAL © Copyright Baker Botts 2024. All Rights Reserved.

**C. Background:  Despite years of litigation, Bravia has been unable to get paid for services provided to Judgment Debtor's former parent company, which Judgment Debtor unconditionally guaranteed.**

21.    From 2011 to 2018, Bravia and its affiliates provided services to HNA Group Co., Limited ("HNA Group"), a vast Chinese conglomerate, and its affiliates' to assist in the indirect acquisition of Ingram Micro Inc. ("Ingram Micro").  Ex. 1.

22.    HNA Group and its affiliates owed considerable outstanding fees and sums to Bravia for services rendered, which Bravia agreed to resolve via a Payment and Indemnity Agreement and an Unconditional Guarantee with HNA Group and Judgment Debtor, both executed on August 20, 2019.  *Id*.

23.    The Payment and Indemnity Agreement provided, among other things, that Bravia was to (i) be notified of any sale activity involving Ingram Micro, and (ii) receive $10 million from the sale of HNA Group's indirect subsidiary, Ingram Micro as payment for the services Bravia performed in assisting HNA Group acquire Ingram Micro that were still outstanding. *Id*.

24.    As part of a thoroughly negotiated payment plan, Judgment Debtor, then a wholly-owned subsidiary of HNA Group, unequivocally agreed in the Unconditional Guarantee to "absolutely, unconditionally, and irrevocably" guarantee the $10 million payment by HNA Group to Bravia in the event of a sale of Ingram Micro.  *Id*.

25.    In 2021, HNA Group collapsed, in what the New York Times said would be "the biggest corporate collapse in recent Chinese history." *HNA Was Once China's Biggest Dealmaker. Now It Faces Bankruptcy*, THE NEW YORK TIMES, 9/24/2021, https://www.nytimes.com/2021/02/06/business/hna-was-once-chinas-biggest-dealmaker-now-it-faces-bankruptcy.html#:~:text=HNA%20was%20once%20the%20face,to%20make%20large%20globa

l%20acquisitions.

26.    On April 8, 2021, after Bravia discovered in the news that HNA Group was in advanced talks to sell Ingram Micro and breached its obligations to notify Bravia of the impending sale as required by the Payment and Indemnity Agreement, Bravia filed a suit against HNA Group and Judgment Debtor in the Supreme Court of the State of New York, County of New York, Commercial Division Part 43, in *Bravia Capital Hong Kong v. HNA Group Co., Limited, HNA Group North America LLC*, Index No. 652320/2021.  *Id*.; Ex. 2.

27.    On July 2, 2021, Ingram Micro was sold to Platinum Equity for approximately $7.2 billion.  Ex. 1.

28.    HNA Group did not pay Bravia in accordance with the Payment and Indemnity Agreement following the sale of Ingram Micro and breached that agreement.  Ex. 3.

29.    Following HNA Group's breaches of the Payment and Indemnity Agreement, Judgment Debtor outright refused to pay Bravia $10 million that it had "absolutely, unconditionally, and irrevocably," guaranteed thereby breaching the Unconditional Guarantee.  Ex. 1.

30.    On January 7, 2022, Bravia filed a Second Amended and Supplemental Complaint. *Id*.

31.    HNA Group and Judgment Debtor's first set of lawyers sought to withdraw and stay all proceedings in the case on August 26, 2022 because HNA Group and Judgment Debtor "failed to cooperate with counsel and have made it unreasonably difficult for counsel to effectively carry out their representation" and because HNA Group and Judgment Debtor failed to pay their lawyers. Ex. 4.

32.    Bravia opposed the request to withdraw, arguing that it was merely a delay tactic.

*Id.*

33.    The Court granted HNA Group and Judgment Debtor's first set of lawyers' withdrawal on October 24, 2022. *Id.*

34.    The case was stayed from August 26, 2022 until December 6, 2022.  Ex. 5.

35.    HNA Group and Judgment Debtor retained new counsel, who appeared on December 2, 2022.  Ex. 6

36.    HNA Group never retained new counsel and stopped participating in the litigation, and the court entered a default judgment against HNA Group on January 31, 2023.  Ex. 7.

37.    Bravia moved for summary judgment against Judgment Debtor on March 29, 2023. Ex. 8.

38.    The Court set the hearing on Bravia's motion for summary judgment on August 24, 2023.

39.    On August 21, 2023, three days before the hearing, Judgment Debtor's second set of lawyers sought to withdraw and stay all proceedings in the case.  Ex. 9.

40.    The Court stayed all proceedings in the case the same day.  Ex. 10.

41.    Bravia again opposed the request to withdraw arguing, *inter alia*, that it was merely another delay tactic.  Ex. 11.

42.    Bravia submitted several letters to the Court requesting that the Court expeditiously decide Judgment Debtor's second set of lawyers' request to withdraw because Bravia feared that Judgment Debtors assets would be dissipated or transferred prior to entry of judgment.  Exs. 12, 13, 14.

43.    On October 5, 2023, the Court granted Judgment Debtor's second set of lawyers' request to withdraw, adjourned oral argument on Bravia's motion for summary judgment until

November 30, 2023, and continued to stay the case. Ex. 15.

44.    The case was stayed again, extending the August 21, 2023 stay to November 17, 2023. *Id.*

45.    For work duly performed and services rendered, Bravia has attempted to collect from HNA Group and Judgment Debtor for more than four years.   But, as detailed below, as Bravia was imminently set to receive judgment against Judgment Debtor, SL Green—the new ultimate owner of Judgment Debtor—created a subsidiary to shelter Judgment Debtor's assets and moved Judgment Debtor's assets to the subsidiary October 31, 2023 while the case between Bravia and Judgment Debtor was stayed.

**D. 245 Park Secured Turnover of Palisades Member 1 to Sell Palisades Training Center's Assets Without Regard to Judgment Debtor's Liabilities.**

46.    On May 19, 2023, to satisfy the debt of a former corporate parent of Palisades Member 1, this Court granted 245 Park's motion for a turnover of Palisades Member 1. Ex. 16, *245 Park Member LLC v. HNA Group (Int'l) Co. Ltd* , 1:22-cv-05136-JGK-OTW (S.D.N.Y.), Dkt. No. 149.

47.    The former corporate parent appealed, and the United States Court of Appeals for the Second Circuit entered an administrative stay of the turnover order on June 8, 2023. *See* Ex. 17, *245 Park Member LLC v. HNA Group (Int'l) Co. Ltd.*, 23-842 (2nd Cir.).

48.    On June 8, 2023, Bravia advised counsel for 245 Park that Bravia is a creditor of Judgment Debtor and that anything held directly or indirectly by Judgment Debtor would be turned over subject to Judgment Debtor's debt to Bravia. Ex. 18.

49.    Bravia further explained that 245 Park's "abundantly clear . . . main objective in effectuating" turnover was "to obtain the proceeds of the sale of the Palisades Premier Conference Center," which was owned by Judgment Debtor's wholly owned subsidiary, Palisades Training

10

Center. *Id.*

50.    The Palisades Premier Conference Center ("Conference Center") is real property located at 334 Rte. 9W, Orangetown, New York 10964 (Section 78.13, Block 1, Lot 1), Instrument Number 2016-00004312, in the County of Rockland, and State of New York.

51.    The Conference Center was indirectly owned by Palisades Member 1 and was its only significant asset. *Id.*

52.    As Bravia explained, 245 Park had represented to this Court that its real interest in turnover was the "net proceeds . . . once the Conference Center is sold," at which point Palisades Training Center would "be dissolved." *Id.* (quoting 245 Park's representations to this Court that "[i]f 245 Park cannot obtain the Conference Center, or proceeds from any sale of the Conference Center, [245 Park's] Judgment would be essentially worthless").[1]

53.    On July 11, 2023, the Second Circuit vacated its administrative stay and declined to stay the district court's turnover order pending appeal. *See* Ex. 19, *245 Park Member LLC* (2nd Cir.), Dkt. No. 49.

54.    Turnover of Palisades Member 1 to 245 Park occurred following the Second Circuit's vacatur of its administrative stay on or about July 12, 2023. Ex. 20.

55.    On July 13, 2023, Bravia again advised 245 Park's counsel that any attempt to direct Palisades Training Center to sell the Conference Center outside Judgment Debtor's corporate ownership structure, for less than fair market value, would constitute a fraudulent transfer. Ex. 21.

56.    Bravia was not at this time aware that turnover had been effectuated, and again

---

[1] 245 Park had also previously argued that turnover would allow 245 Park to "work out an arrangement" with a buyer and "allow the funds to flow through." Ex. 23, *245 Park Member LLC* (S.D.N.Y.), Dkt. No. 141 at 14:5–8.

11

wrote to 245 Park's counsel, inquiring about turnover status on August 2, 2023.  Ex. 22.

57.     245 Park's counsel has not responded to Bravia's letters described herein.

58.     As 245 Park has acknowledged to the Second Circuit, Palisades Member 1 was "many corporate layers" removed from the Conference Center, and the "numerous intermediate holding companies may have been subject to liabilities." *245 Park Member LLC* (2nd Cir.), Dkt. 81 at 43.

59.     Notwithstanding these liabilities, responding to the charge that it would sell the Conference Center, 245 Park told the Second Circuit that "it"—245 Park—"is absolutely entitled to do what it wants with [Palisades Member 1] or its assets." *Id*. at 34.

60.     At oral argument of its case at the Second Circuit (on March 26, 2024), counsel for the Appellee, 245 Park, stated that his client—*i.e*, 245 Park—"**is essentially SL Green**." *245 Park Member LLC* (2nd Cir.), Oral Arg., Mar. 26, 2024, starting at 15:14.

61.     On August 3, 2023, following turnover of Palisades Member 1 (Judgment Debtor's parent), counsel for Judgment Debtor wrote to counsel for 245 Park that, because "the company has been transferred to your client" (i.e., Judgment Debtor had been transferred to 245 Park), it could not keep representing Judgment Debtor in its state-court proceeding against Bravia.  Ex. 24; *see also* Ex. 25.

62.     Despite repeated requests by counsel for Judgment Debtor, which still represented Palisades Member 1 against 245 Park in appealing the turnover order, 245 Park delayed its responses to Judgment Debtor such that counsel for Judgment Debtor moved to withdraw on August 21, 2023, three days before Bravia's summary-judgment motion was set for a hearing as discussed above.  *See* Exs. 11, 24, 25.

63.     Counsel for Judgment Debtor also argued that, following turnover, Judgment

Debtor had no management team and no contact person for them to communicate with them. Ex. 26. Counsel for Judgment Debtor explained that 245 Park was the only entity it could communicate with in its representation of Judgment Debtor. *Id*

64. Bravia opposed the motion to withdraw because it would trigger a lengthy stay during which SL Green would have time to dispose of the Conference Center. As Bravia explained when opposing the motion to withdraw, the "relevant inquiry" was "whether the corporate relationship between [Judgment Debtor and 245 Park was] 'so close as to deem them a single entity for conflict of interest purposes.'" Ex. 11 (quoting another source).

65. The New York Supreme Court, accepting that Judgment Debtor and 245 Park were a single entity, granted withdrawal on the basis that a conflict of interest did exist. Ex. 15.

66. Judgment Debtor's counsel's motion to withdraw predictably triggered a lengthy stay of the state-court proceeding from August 21, 2023 until November 17, 2023. *Id*.

**E. Palisades Training Center Transferred Property to Palisades Fee Owner, an Insider, Alienating Judgment Debtor of Any Valuable Asset.**

67. On October 31, 2023, while Bravia's summary-judgment motion against Judgment Debtor was stayed, and with SL Green having attempted but been unable to sell the Conference Center,[2] Palisades Training Center transferred its entire interest in the Conference Center to its newly created subsidiary, Palisades Fee Owner, for the sole purpose of fraudulently transferring the last remaining assets of Judgment Debtor from the reach of Bravia. Exs. 27, 28.

68. Palisades Training Center has no assets resulting from the transfer and is insolvent. Ex. 27.

---

[2] News reports reflect that SL Green was poised to negotiate with Reveil, a team of two California developers that won the municipal authority's bid to name a development team for the Conference Center. Ex. 32, https://rcbizjournal.com/2023/08/03/orangetown-relinquishes-power-over-future-of-hna-training-center-redevelopment/ . However, this deal fell through.

69.     Judgment Debtor has no directly or indirectly held assets of value following the transfer.  Ex. 29.

70.     Judgment Debtor was solvent before the transfer but became insolvent because of the transfer.

71.     The transfer was for zero consideration, *i.e.*, $0.00.  Ex. 28.

**F.  Bravia Obtains Judgment Against Judgment Debtor but Cannot Collect.**

72.     The Court granted Bravia's motion for summary judgment on December 1, 2023 and entered judgment against Judgment Debtor in the amount of $12,986,660.70 on December 15, 2023. Ex. 30, 31.

73.     The Court vacated the original judgment and entered a revised judgment against Judgment Debtor in the amount of $12,986,660.70 on January 10, 2024 because prior to the entry of judgment, Judgment Debtor changed its entity name from HNA Group North America LLC to Palisades Member 2 LLC on August 7, 2023.  Ex. 33

74.     Bravia's $12,986,660.70 judgment against Palisades Member 2 LLC remains unpaid.

75.     Without the Court's assistance, Bravia will be unable to collect on its judgment because Defendants have intentionally and illegally siphoned Judgment Debtor's assets into a different corporate silo and insider of SL Green to obstruct Bravia's ability to collect.

**G.  SL Green Directly Controls All Controlled Defendants.**

76.     The officers of Judgment Debtor are each person who holds the office of senior vice president or higher of SL Green.  Ex. 29.

77.     The role of the officers of Judgment Debtor is described by Judgment Debtor as merely "to adequately promote the interests of the company." *Id*.

14

78.     Judgment Debtor has not disclosed any directors. *Id*.

79.     Judgment Debtor has no Board.

80.     The only persons Judgment Debtor identified as having knowledge of its assets are Palisades Member 1, Scott Kocis, and Harrison Sitomer. *Id*. Mr. Kocis works in SL Green's Investment Group. Ex. 34, https://www.linkedin.com/in/scott-kocis-a9862279. Harrison Sitomer is the Chief Investment Officer of SL Green. Ex. 35, https://slgreen.com/about/executive-management/harrison-sitomer/.

81.     Judgment Debtor maintains corporate records from the period following the turnover order at the same location as SL Green's headquarters, One Vanderbilt Avenue, New York, NY 10017. Ex. 29.; Ex. 36, https://slgreen.com/contact/ .

82.     Judgment Debtor has no bank accounts held in its name. Ex. 29.

83.     Judgment Debtor has no source of income or receipts. *Id*.

84.     Judgment Debtor has not paid dividends. *Id*.

85.     245 Park has its office with SL Green. Ex. 37.

86.     The officers of each Controlled Defendant are each person who holds the office of senior vice president or higher of SL Green.

87.     Mr. Levine is an officer of SL Green and each Controlled Defendant.

88.     Mr. Levine was an officer of SL Green and each Controlled Defendant on October 31, 2023.

89.     Mr. Sitomer is an officer of SL Green and each Controlled Defendant.

90.     Mr. Sitomer was an officer of SL Green and each Controlled Defendant on October 31, 2023.

91.     Palisades Fee Owner's Certificate of Formation was filed on September 22, 2023,

15

with the Delaware Secretary of State. Ex. 38.

92. The Authorized Person signing the Certificate of Formation is Mona R. Seecharran who is a paralegal at SL Green. *Id*.

93. Palisades Fee Owner is a subsidiary of SL Green. Ex. 39.

94. Each Controlled Defendant submitted information subpoena responses to Bravia certified by the same authorized representative, Mr. Sitomer, and signed by the same counsel. Exs. 27, 29, 40, 41.

95. Mr. Sitomer verified under penalty of perjury that the Conference Center was transferred from Palisades Training Center, establishing his knowledge thereof. Exs. 27, 29, 40, 41.

96. Mr. Sitomer knew of, advised, consented to, and agreed to participate in a plan to transfer the Conference Center.

97. Mr. Sitomer did not stop or attempt to stop the transfer of the Conference Center despite his knowledge that it would be transferred.

**H. SL Green Effectuated the Fraudulent Transfer of the Conference Center to an Insider to Deprive Judgment Debtor of Its Assets.**

98. The deed transferring the Conference Center from Palisades Training Center to Palisades Fee Owner was signed by Andrew S. Levine, listed as Executive Vice President of Palisades Training Center. Ex. 28. Mr. Levine is the General Counsel, Executive Vice President, Corporate Secretary, and Chief Legal Officer of SL Green. Ex. 42, https://slgreen.com/about/executive-management/andrew-s-levine/ .

99. The deed contains the following signature from Mr. Levine:

**PALISADES TRAINING CENTER NY LLC,**
a Delaware limited liability company

By: _____
Name: Andrew S. Levine
Title: Executive Vice President

Ex. 28.

100.     Mr. Levine concurrently signed for the "SELLER SIGNATURE" and "BUYER SIGNATURE" lines on the Real Property Transfer Report.  Ex.  *Id*.

101.     The Real Property Transfer Report, recorded with the deed in Rockland County, contains the following signatures from Mr. Levine:



*Id*.

102.     Palisades Fee Owner's counsel is listed as Gary Kleinman, who leads outside counsel teams for SL Green.  *Id*.; Ex. 43.

103.     The Real Property Transfer Report for the transfer of the Conference Center from Palisades Training Center to Palisades Fee Owner directs tax bills to be sent to SL Green.  Ex. 28.

104.     The Real Property Transfer Report states that the transfer of the Conference Center from Palisades Training Center to Palisades Fee Owner was a "[s]ale between Related Companies

17

or Partners in Business." *Id*.

105.    The full sale for the Conference Center price was $0.00. *Id*.

106.    The Real Property Transfer Report shows the Full Sale Price:

| SALE INFORMATION | |
| --- | --- |
| 11. Sale Contract Date | 10-31-2023 |
| * 12. Date of Sale/Transfer | 10-31-2023 |
| *13. Full Sale Price | 0.00 |

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

*Id*.

107.    The assessed value for the Conference Center was listed in the Real Property Transfer Report as $12,400,000.00. *Id*.

108.    Palisades Training Center had previously negotiated a draft agreement to sell the Conference Center for $33,000,000.00. Ex. 44.

109.    The Real Property Transfer Report lists Mr. Levine and SL Green as the contact for Palisades Fee Owner.

110.    Notwithstanding that the Conference Center was owned by Palisades Training Center, SL Green controlled the disposition of the Conference Center. SL Green has held itself out as having received the property itself via a turnover order. *See* Ex. 32, https://rcbizjournal.com/2023/08/03/orangetown-relinquishes-power-over-future-of-hna-training-center-redevelopment/ (news article characterizing SL Green as "successful in the Southern District of New York" and securing "an order compelling [Palisades Member 1's former parent] to transfer the property in partial satisfaction" of a judgment); *see also* Ex. 45, https://rcbizjournal.com/2023/06/25/fate-of-hna-palisades-training-center-becomes-more-

complicated-with-sl-green-litigation-adding-new-twist/ (similar).

111.    SL Green's counsel has dealt with a municipal authority's counsel regarding the Conference Center, misleading the municipal authority to say that SL Green could sign with a buyer or be "free to do what it wants with the property." *Id*.

[remainder of page intentionally left blank]

112.    The graphic below illustrates SL Green's role in the fraudulent transfer:



**I.  Palisades Training Center Possessed Judgment Debtor's Funds.**

113.  Judgment Debtor loaned money to Palisades Training Center. Exs 46, 47.

114.  Palisades Training Center stated that "money was loaned to [Palisades] Training Center as needed for [Palisades] Training Center's operations and other business needs (roughly 1 to 2 times per month)."  Ex. 46.

115.  Palisades Training Center also stated that "[t]here are no written loan agreements or promissory notes governing any loaned funds, and the loaned funds are not subject to interest." *Id.*

116.  As of September 28, 2022, Palisades Training Center owed Judgment Debtor $1,563,660.12 for those unpaid loans.  *Id*.

117.  The $1,563,660.12 in loans from Judgment Debtor to Palisades Training Center as of September 28, 2022 remains unpaid.

118.  Judgment Debtor continued to loan money to Palisades Training Center every month from October 2022 until February 2023.

119.  From October 2022 until February 2023 Judgment Debtor loaned Palisades Training Center $173,000.

120.  The additional $173,000 in loans from Judgment Debtor to Palisades Training Center from October 2022 until February 2023 remains unpaid.

121.  Palisades Training Center currently owes Judgment Debtor $1,736,660.12.

122.  Palisades Training Center stated on January 26, 2024 that it had "no information about the" loans from Judgment Debtor to Palisades Training Center other than what Palisades Training Center stated previously on November 4, 2022 in response to 245 Park's information subpoena.  Ex. 27.

## IV.    Causes of Action and Counts

**COUNT (1)**            **Fraudulent Transfer – NY DCL § 276.**

123.    Bravia incorporates all allegations in, and exhibits attached to, to this Complaint as if fully set out in this count.

124.    SL Green forced Palisades Training Center to actually and/or constructively fraudulently transfer the Conference Center to its affiliate, Palisades Fee Owner, for no consideration on October 31, 2023.

125.    245 Park, Palisades Member 1, Judgment Debtor, Palisades Training Center, and Palisades Fee Owner are alter egos and mere instrumentalities of SL Green.

126.    SL Green and Controlled Defendants operated as a single economic entity to perpetrate an overall element of injustice or unfairness against Bravia and thereby harmed Bravia.

127.    245 Park has repeatedly stated its intent to sell the Conference Center to collect on 245 Park's judgment, without regard to the corporate forms between 245 Park and Conference Center. *E.g.*, Ex. 48.

128.    The transfer of the Conference Center to Palisades Fee Owner, an affiliate, was necessary for Defendants' scheme to sell the Conference Center without Bravia being able to collect from Judgment Debtor via a turnover or other collection proceeding.

129.    SL Green exercises exclusive domination and control to the point that the Controlled Defendants no longer have legal or independent significance of their own.

130.    The Controlled Defendants (except Palisades Fee Owner) are not adequately capitalized.

131.    The Controlled Defendants have no bank accounts.

132.    The Controlled Defendants (except Palisades Fee Owner) are not solvent, with the

22

vesting of assets and liabilities being strategically distributed by SL Green so as to defraud creditors.

133.    The Controlled Defendants' records are kept mingled with SL Green's records.

134.    The Controlled Defendants do not pay dividends.

135.    The Controlled Defendants' officers and directors do not function properly.

136.    Corporate formalities are not observed for the Controlled Defendants.

137.    SL Green has siphoned the Controlled Defendants' assets for its own benefit.

138.    The Controlled Defendants simply function as a façade for SL Green.

139.    The Controlled Defendants have not performed any due diligence and have no independent discretion in their interactions with SL Green.

140.    Palisades Fee Owner has retained the Conference Center to date.

141.    The transfer of the Conference Center followed a threat of suit by Bravia.

142.    The transfer of the Conference Center occurred just before Bravia obtained judgment against Judgment Debtor.

143.    SL Green ignored, acted notwithstanding, and acted in derogation of all corporate forms and formalities existing between it and Palisades Training Center.

144.    The general chronology of the transfer and totality of the circumstances demonstrate an intent to secrete the Conference Center to the detriment of Bravia.

145.    SL Green forced the Controlled Defendants to act contrary to their own interests.

146.    To the extent any Defendant's liability for fraudulent transfer is not established by its actual commission of the fraudulent transfer, or by the fact that the entity/entities that actually committed the fraudulent transfer are alter egos or mere instrumentalities of that Defendant, then: (a) that Defendant conspired with other Defendants to fraudulently transfer the Conference Center

23

so that the Conference Center would not be recoverable by creditors; (b) agreed to fraudulently transfer the Conference Center; (c) committed overt acts in furtherance of Defendants' agreement to fraudulently transfer the Conference Center (including execution of the deed transferring the Conference Center and the creation of Palisades Fee Owner); and (d) thereby caused damage to Bravia.

147.    Bravia seeks a money judgment against Defendants and judgment to avoid the transfer of the Conference Center and levy execution on the asset transferred or its proceeds should it be sold, as well as punitive damages for, *inter alia*, game smithing the judiciary process and causing undue delay while maliciously plotting a fraud in tandem.

**COUNT (2)        Enforcement of Money Judgments (Palisades Training Center's Debt to Judgment Debtor) – NY CPLR § 5227.**

148.    Bravia incorporates all allegations in, and exhibits attached to, this Complaint as if fully set out in this count.

149.    Palisades Training Center is indebted to Judgment Debtor in the amount of $1,736,660.12.

150.    Palisades Training Center lacks sufficient assets to satisfy its debt to Judgment Debtor due to the transfer of the Conference Center.

151.    The transfer of the Conference Center was a fraudulent transfer that prevented Judgment Debtor from collecting on the $1,736,660.12 owed by Palisades Training Center, for which Judgment Debtor has a cause of action for fraudulent transfer against Palisades Training Center and Palisades Fee Owner, as well as against all Defendants because Palisades Training Center and Palisades Fee Owner conspired with Defendants or are alter egos and mere instrumentalities thereof.

152.    Bravia seeks judgment against Palisades Training Center and Palisades Fee Owner

24

to collect on their debt owed to Judgment Debtor, and against all Defendants because Palisades Training Center and Palisades Fee Owner conspired with Defendants or are alter egos and mere instrumentalities thereof, in the amount of $1,736.660.12.

**COUNT (3)**     **Enforcement of Money Judgments (Andrew Levine's and Harrison Sitomer's Debt to Judgment Debtor) – NY CPLR § 5227**

153.    Bravia incorporates all allegations in, and exhibits attached to, this Complaint as if fully set out in this count.

154.    Mr. Levine is an officer of Judgment Debtor and owes fiduciary duties to Judgment Debtor.

155.    Mr. Sitomer is an officer of Judgment Debtor and owes fiduciary duties to Judgment Debtor.

156.    At the time that Mr. Levine transferred the Conference Center, Mr. Levine and Mr. Sitomer owed fiduciary duties to Judgment Debtor.

157.    Judgment Debtor retains a cause of action against Mr. Levine and Mr. Sitomer for breach of fiduciary duty by effecting and/or allowing the transfer of the Conference Center, thereby breaching the duties of good faith, loyalty, and oversight.

158.    By transferring the Conference Center, Mr. Levine breached the duties of loyalty and good faith.

159.    Mr. Sitomer consciously ignored evidence that the transfer of the Conference Center would harm Judgment Debtor and its creditors, including Bravia, breaching the duty of oversight.

160.    Judgment Debtor's cause of action against Mr. Levine and Mr. Sitomer is a debt owed by these individuals to Judgment Debtor.

161.    Transferring the Conference Center directly and definitively caused Judgment

Debtor to become insolvent.

162.    The beneficiaries of Mr. Levine's and Mr. Sitomer's fiduciary duties, with respect to the transfer of the Conference Center, were Judgment Debtor and its creditors.

163.    Bravia seeks judgment against Mr. Levine and Mr. Sitomer in the amount of $12,986,660.70.

**COUNT (4)         Enforcement of Money Judgments (Turnover of Palisades Training Center) – NY CPLR § 5225.**

164.     Bravia incorporates all allegations in, and exhibits attached to, this Complaint as if fully set out in this count.

165.    Judgment Debtor is in the possession of, and has an interest in, Palisades Training Center as personal property.

166.    Judgment Debtor has been ordered by judgment to pay $12,986,660.70 to Bravia but has not satisfied such judgment.

167.    Bravia seeks judgment against Judgment Debtor requiring it to turnover its interest in Palisades Training Center to Bravia in partial satisfaction of Bravia's judgment.

### V.        Jury Demand

168.    Bravia demands a jury trial on all issues so triable.

### VI.        Prayer for Relief

169.    Bravia seeks the following relief:

a.    A money judgment against Defendants in the amount of its judgment against Judgment Debtor, $12,986,660.70, all of which is collectible through Counts (1) and (3), and $1,736,660.12 of which is also collectible through Count (2);

b.    Turnover of Palisades Training Center (Count (4);

c.    Pre-judgment and post-judgment interest;

d.  Avoidance and unwinding of the October 31, 2023 transfer of the Conference Center and the right to levy execution thereon or the proceeds should it be sold (Count (1));

e.  Punitive damages;

f.  Costs; and

g.  Attorneys' fees.

Dated: March 27, 2024

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ Lewis Zirogiannis*
Lewis Zirogiannis
Ryan Ward
Zachary Stone (*pro hac vice* motion forthcoming)
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Tele:  (212) 408-2500
lewis.zirogiannis@bakerbottts.com
ryan.ward@bakerbotts.com
zachary.stone@bakerbotts.com

*Attorneys for Plaintiff*
*Bravia Capital Hong Kong Limited*