UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRAVIA CAPITAL HONG KONG LIMITED,

Plaintiff,

- against -

SL GREEN REALTY CORPORATION. ET AL.,

Defendants.

24-cv-2296 (JGK)

Memorandum Opinion and Order

**John G. Koeltl, District Judge:**

This Memorandum Opinion and Order addresses the Court's subject-matter jurisdiction over this case. Before resolving the issue of subject-matter jurisdiction, the Court briefly summarizes the relevant factual allegations and the procedural history.

On December 15, 2023, the plaintiff, Bravia Capital Hong Kong Limited ("BCHK") obtained a final judgment in the New York State Supreme Court, New York County, totaling $12,986,660.70 against HNA Group North America LLC. See Second Am. Compl. ("SAC") ¶¶ 71–72, ECF No. 68; Answer ("Ans.") ¶ 71, ECF No. 73. Defendant Palisades Member 2 ("PM2") was formerly named HNA Group North America LLC. SAC ¶ 5; Ans. ¶ 5. On January 10, 2024, because PM2 had changed its name prior to the entry of the earlier judgment, BCHK allegedly obtained a revised judgment in the same amount against PM2 (the "NYS Judgment"). While the state-court action was pending, PM2's direct subsidiary, Defendant Palisades Training

Center NY LLC ("PTC") transferred PTC's principal asset, the Palisades Premier Conference Center (the "PPC Center"), to Defendant Palisades Fee Owner LLC ("PFO"), a newly created subsidiary of Defendant SL Green Realty Corporation ("SL Green"). SAC ¶¶ 66–67.

BCHK filed this action on March 27, 2024. ECF No. 1. On June 28, 2024, BCHK filed the First Amended Complaint ("FAC"). Following the Court's ruling granting in part and denying in part the defendants' motion to dismiss, Bravia Cap. H.K. Ltd. v. SL Green Realty Corp., No. 24-cv-2296, 2025 WL 552046, at *15 (S.D.N.Y. Feb. 18, 2025), reconsideration denied, 2025 WL 950622 (S.D.N.Y. Mar. 28, 2025), BCHK filed the SAC, ECF No. 68. In Count One of the SAC, BCHK alleges that the transfer of the PPC Center, which was for zero dollars, was fraudulent. SAC ¶¶ 130–63. In Count Two, BCHK asserts a cause of action based on the NYS Judgment against PM2. SAC ¶¶ 164–67. In Count Three, BCHK asserts a cause of action based on the NYS Judgment against the remaining defendants as alter egos. See id. ¶¶ 168–94. The Court granted BCHK's motion for judgment on the pleadings as to Count Two on July 3, 2025, Bravia Cap. H.K. Ltd. v. SL Green Realty Corp., No. 24-cv-2296, 2025 WL 1865918 (S.D.N.Y. July 3, 2025), and entered final judgment as to Count Two on August 8, 2025, ECF No. 93. The other counts remain outstanding.

In filing this action, BCHK invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity of citizenship between litigants and an amount-in-controversy

greater than $75,000. See 28 U.S.C. § 1332. Throughout this litigation, BCHK has repeatedly represented that diversity of citizenship exists. In the original Complaint, BCHK alleged that it was a Hong Kong corporation with its principal place of business in Hong Kong and that the defendants were all citizens of New York. See Complaint ("Compl.") ¶¶ 1–13, ECF No. 1. BCHK repeated these allegations in the First and Second Amended Complaints. See FAC ¶¶ 1–13, ECF No. 40; SAC ¶¶ 1–9. In addition, on the Civil Cover Sheet BCHK filed in connection with the commencement of this action, BCHK listed its address as 99 Queen's Road, Central, Hong Kong. See ECF No. 2. When the Court sua sponte directed the parties to explain why subject-matter jurisdiction exists in this case, ECF No. 50, BCHK responded that "[a]t the time of filing, BCHK was a Hong Kong 'Limited' corporation incorporated in Hong Kong with its principal place of business in Hong Kong," ECF No. 52. And, when it submitted its proposed judgment on Count Two on August 6, 2025, BCHK represented its address as Suite 6510, 99 Queen's Road, Central, Hong Kong. ECF No. 91-1.

Those representations turned out to be false. On January 5, 2026, the defendants filed a letter requesting leave to file a motion to dismiss for lack of subject-matter jurisdiction. ECF No. 134. In that letter, the defendants informed the Court that they had "recently uncovered compelling evidence demonstrating that diversity jurisdiction never existed in this action because [BCHK's] principal place of business was not Hong Kong, as [BCHK] repeatedly alleged, but New York—the same State of which all [the defendants] are

citizens." Id. That evidence showed that BCHK moved out of 99 Queen's Road in 2018—long before BCHK filed this action—and that BCHK currently has no active office in Hong Kong. See Ex. A to Declaration of Stephen B. Meister, ECF No. 149-1; ECF No. 151, at 5–7.

In response to the defendants' letter, BCHK asserted a new theory of jurisdiction. See ECF No. 136. For the first time in this litigation, BCHK represented that it became a dormant corporation in 2018 and that its citizenship should be based on its location at the time of its last transaction of business, in accordance with the Court of Appeals for the Second Circuit's decision in Pinnacle Consultants, Ltd. v. Leucadia National Corp., 101 F.3d 900, 907 (2d Cir. 1996). See Mem. of Law in Opp. to Mot. ("Opp.") 8–9, ECF No. 159. According to BCHK, its last transaction of business was a 2018 unsuccessful attempt to acquire a container depot located in Singapore. Id. at 4. Also for the first time in this litigation, BCHK disclosed the existence of its managing director, Yuanfang "Robin" Yan ("Mr. Yan"), who was purportedly in charge of managing the failed transaction and who primarily did so from Hong Kong. See id.

On January 21, 2026, the defendants filed a motion to dismiss this action for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court denied the defendants' motion without prejudice but ordered expedited discovery and an evidentiary hearing on the issue of BCHK's citizenship at the time this action was filed. See Bravia Cap. H.K.

Ltd. v. SL Green Realty Corp., No. 24-cv-2296, 2026 WL 1091030, at *3 (S.D.N.Y. Apr. 22, 2026); see also ECF No. 178.

On August 4 and 5, 2026, the Court held an evidentiary hearing to resolve disputed issues of fact relevant to subject-matter jurisdiction. See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 83–84 (2d Cir. 2006) ("[I]n circumstances where subject matter jurisdiction is adequately pleaded but the underlying jurisdictional facts are in question ... [t]he Court may resolve the factual issues concerning jurisdiction either on a summary judgment motion, if appropriate, or, if not, after an evidentiary hearing."). After considering all of the evidence in the record, including the evidence and testimony introduced at the evidentiary hearing, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. BCHK was incorporated in Hong Kong in 2010 "to make investments for its own account as well as the accounts of its clients," in transportation/logistics businesses "primarily limited to Asia or Oceanic." Tr. 5:25–6:2, 7:23–8:1.

2. BCHK's ultimate beneficial owner, Bharat Bhise ("Mr. Bhise"), held BCHK indirectly through Bravia Capital Partners NV, Inc. ("BCPNV"), a Nevada corporation he also owns. Tr. 7:23–8:1, 5:13–14, 151:3–7; see Tr. 38:9–16; 66:16–23; DX-K. At its height, BCHK employed approximately 30 people. Tr. 228:25.

3. From 2013 to 2016, BCHK leased Suite 6510 at 99 Queen's Road Central, Hong Kong. PX-17.[1]

4. From 2016 to March 2018, BCHK leased Suite 3301 at 99 Queen's Road Central, Hong Kong. PX-16.

5. From March 2018 to September 2018, BCHK leased "temporary space" for two administrative personnel at 26/F, Three Pacific Place, 1 Queen's Road East, Hong Kong. PX-16.

6. Beginning in September 2018, BCHK leased a WeWork space, Room 10107, 10/F, YF Life Tower, 33 Lockhart Road, Wan Chai, Hong Kong. Tr. 228:20–22; 20:4–25.

7. BCHK gave up the WeWork space in 2020, when it was shut down during the COVID-19 pandemic. Tr. 9:6–7; 238:18–21. BCHK's last Hong Kong-based employee worked from home until her termination in December 2020. Tr. 77:7–23; 23:1–11; 238:24–239:2.

8. BCHK filed this action on March 27, 2024. ECF No. 1.

9. On the Civil Cover Sheet filed contemporaneously with the initiation of this action, BCHK listed Suite 3301 at 99 Queen's Road as its address. ECF No. 2. BCHK vacated that address in March 2018, six years before it filed this action. <u>See</u> <u>supra</u> ¶ 4.

---

[1] Numbered exhibits refer to the plaintiff's evidentiary hearing exhibits. Lettered exhibits refer to the defendants' evidentiary hearing exhibits.

10. In a proposed judgment submitted on August 6, 2025, BCHK listed its address as Suite 6510 in that same building. ECF No. 91-1. BCHK vacated that address in 2016. See supra ¶ 3.

11. In a letter submitted by BCHK on January 22, 2025, in response to the Court's sua sponte jurisdictional inquiry, BCHK represented that "at the time of filing [in 2024]," BCHK "was a Hong Kong 'Limited' corporation incorporated in Hong Kong with its principal place of business in Hong Kong." ECF No. 52. BCHK filed this action on March 27, 2024. ECF No. 1.

12. On January 5, 2026, the defendants filed a pre-motion letter seeking leave to file a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 134. In that letter, the defendants represented that they had "recently uncovered compelling evidence demonstrating that diversity jurisdiction never existed in this action because Plaintiff's principal place of business was not Hong Kong, as Plaintiff repeatedly alleged, but New York—the same State of which all Defendants are citizens." Id.

13. In response to the defendants' pre-motion letter, BCHK represented for the first time in a letter dated January 7, 2026, that BCHK "is now an inactive corporation" but that "[w]hile it was an active corporation, all of [BCHK]'s operations and transactions were directed, controlled, and coordinated from Hong Kong" by Mr. Yan. ECF No. 136 (emphasis added).

BCHK's January 7, 2026 letter was also the first time that BCHK disclosed the existence of Mr. Yan.

14. At no point prior to January 7, 2026, did BCHK refer to any of its purported Hong Kong addresses as a "former," "last," "last known," or "last permanent" address; nor did BCHK refer to itself in any filing in this case as an "inactive" corporation prior to January 7, 2026.

15. BCHK does not meaningfully address its repeated misrepresentations with respect to its Hong Kong address. BCHK claims, for example, that the Suite 6510 address was a clerical error that occurred when legal staff copied over the address from a previously entered state-court judgment to the proposed federal judgment. ECF No. 199-1, Nos. 3, 7, 9. But that state-court judgment listed the Suite 6510 address in 2023—long after BCHK had abandoned that address.

16. BCHK claims that it ceased to operate as an active corporation in 2018, but that claim is not credible.

17. In support of its argument, BCHK cites an email from Mr. Bhise, PX-11, as confirmation that BCHK was being "wound down." But that is not a fair representation of Mr. Bhise's email. Rather, Mr. Bhise's email states that several BCHK employees "will be leaving the firm," and that others will be relocating to London and New York. PX-11. The email states that BCHK's Hong Kong <u>office</u> "has been wound down" to Jenny Chan and

Kevin Tong, two members of BCHK's accounting staff; it does not state that the corporation itself was being "wound down." See PX-11.

18. BCHK contends that its last transaction of business was its failed 2018 Eng Kong transaction. But BCHK continued to operate as an active corporation after 2018.

19. After 2018, BCHK continued to receive substantial revenues. BCHK received approximately $17.5 million in fees from Sinoceanic Shipping Holdings Ltd. ("Sinoceanic"). DX-A. Those fees were payable only upon the construction, delivery, and acceptance of vessels. Tr. 26:12–20; 203:20–204:3.

20. As of 2018, no fees from Sinoceanic were yet owed to BCHK. Mr. Bhise testified that going back to 2018, the payment was not yet due because that transaction had not yet eventuated. Tr. 41:15–17. Had the vessels never been delivered, BCHK would not have been paid. Tr. 204:4–8. Five or six vessels were delivered after 2018, the last in 2020 or 2021. Tr. 27:23–28:6; 208:12–209:3.

21. BCHK did not attempt to liquidate or sell its interest in the Sinoceanic fee stream in 2018. Tr. 209:1–11. Nor was BCHK a passive recipient of those fees. BCHK initiated corresponding payments to companies owned by its chairman, Stuart Smith, and by a Sinoceanic executive, whom

BCHK identified as entitled to portions of the funds it received. Tr. 45:17–46:2; 48:7–16.

22. BCHK also received more than $9 million from Euro Trailers Investors LLC ("Euro Trailers") after 2018. BCHK is Euro Trailers' parent; Mr. Bhise contributed the Euro Trailers shares to BCHK for favorable tax treatment. Tr. 204:13–18. Euro Trailers held a 6 percent interest in TIP Trailers, acquired through a share grant from HNA Group Co. Ltd. ("HNA"). PX-18; Tr. 51:15–20; 240:8–12. Euro Trailers received payment on that interest when TIP was sold in 2018, and the proceeds were up-streamed to BCHK as its parent. Tr. 51:7–23.

23. The Euro Trailers payments to BCHK were made in liquidation of BCHK's shares in Euro Trailers, and the liquidation occurred "very close to the dates that the payments were made." Tr. 205:1–15. BCHK's bank statements reflect those payments from August 2018 through October 2020. DX-B.

24. BCHK also continued to pay substantial expenses after 2018. BCHK paid its own payroll through October 2021, DX-D; the payroll of its affiliate Bravia Capital Advisors (HK) Ltd. through October 2020, DX-E; and consultants through May 2021, DX-G.

25. For the tax year ending March 31, 2020, BCPNV's IRS Form 5471 recorded advisory fees of $5,546,394, legal and professional fees of $377,190,

travel expenses of $270,042, and insurance expenses of approximately $75,000. DX-K. Jonathan Bander, BCHK's accountant and one of its corporate directors, confirmed that those figures reflected activity in that year. Tr. 123:23–124:9. Mr. Bhise could not explain what the advisory fees were paid for. Tr. 68:17–19.

26. BCHK reported substantial profits for periods after 2018. BCHK's filing with the Hong Kong Inland Revenue Department for the twelve months ending March 31, 2020, reported profits of HKD 223 million, or approximately $27 million. DX-J. BCPNV's Form 5471 for the same period independently reported more than $9.8 million in BCHK profits. DX-K.

27. Mr. Bhise attested in a declaration dated July 21, 2026, that BCHK "generated" no profits after 2018. DX-OO, at ¶ 3. At the hearing, he explained that he understood "generated" to mean that BCHK's post-2018 receipts, including the Sinoceanic fees, were attributable to services BCHK performed before 2018. Tr. 195:9–21; 206:7–18. That explanation does not withstand his own testimony that the payments neither became due nor were made until after 2018. Tr. 41:15–17; 208:12–25.

28. BCHK also entered into new business after 2018. In 2019, BCHK negotiated and executed a multi-party restructuring with HNA, unrelated to the Sinoceanic or Euro Trailers transactions. Tr. 218:4–13. The restructuring settled receivables owed under HNA service agreements, Tr. 32:20–25,

and did not concern the Euro Trailers liquidation, see supra ¶¶ 22–23. The restructuring was embodied in five interrelated agreements, each dated August 20, 2019. DX-Q; DX-R; DX-S; DX-T; DX-U.

29. Through those agreements, BCHK obtained guaranties from new and solvent HNA counterparties, including Seaco SRL and HNA Group North America LLC. Seaco SRL had not previously been a responsible counterparty on the underlying service agreements, and HNA Group North America had not previously been a guarantor of them. Tr. 171:6–9; 177:10–20.

30. The 2019 agreements also added BCHK and Bravia Capital Partners, Inc. ("BCP") as obligees, set new payment terms that compromised approximately $26 million of the amounts previously owed, and created new indemnification rights running in BCHK's favor that extended for several years past closing. Tr. 181:9–20; 144:24–145:7; DX-V. Mr. Bhise wrote that "indemnification is not a static document but goes on past closing for several years," and agreed that indemnification was "paramount." Tr. 162:17–163:4.

31. The 2019 agreements were expressly conditioned on a release by BCHK's affiliate, Global FinCo Acquisition Ltd., of its security interest in Cronos Ltd. shares valued at approximately $130 million, which Global FinCo held as collateral for amounts HNA owed. DX-U.

32. BCHK characterizes the 2019 restructuring as the mere collection of existing receivables. Tr. 23:17–20; 32:20–22; 220:5–25. The agreements themselves show otherwise. They replaced and superseded the underlying service agreements they compromised, and they altered the material business terms and the parties bound by them. Tr. 169:21–25; 173:22–25; DX-Q ¶ 12; DX-S ¶ 12. The 2019 restructuring was therefore a new transaction of business.

33. BCHK also solicited new business after the Eng Kong transaction failed. On November 10, 2018, Mr. Bhise wrote to an HNA executive in New York proposing that HNA retain BCHK for continued advisory services on transactions BCHK had originated and on others. DX-L. That solicitation, like the Eng Kong transaction, did not result in a completed deal, but it postdates the transaction BCHK identifies as its last.

34. BCHK continued to hold investment assets after 2018. At their depositions, Mr. Bhise and Mr. Yan testified that BCHK held HNA share grants in myTECHNIC, a Turkish aircraft maintenance company, and in Africa World Airlines, a Ghanaian airline. DX-M; DX-N; Tr. 183:3–10; 250:13–25. Both remain operating businesses. Tr. 156:24–157:10.

35. At the hearing, Mr. Bhise and Mr. Yan disavowed that testimony. Neither disputed that HNA had issued the share grants or that the grants compensated BCHK for its services. Instead, both testified on cross-

examination that other entities controlled by Mr. Bhise held the grants. Tr. 152:17–155:23; 250:6–251:23.

36. BCHK did not produce the share grants. DX-MM. BCHK instead produced a related HNA share grant, which incorporates a consultancy services agreement dated March 9, 2015, signed by Mr. Yan on BCHK's behalf and governed by New York law, under which the grantee retained BCHK to provide ongoing consultancy services in connection with the grant. DX-O; Tr. 187:6–190:1. No evidence suggests that the withheld share grants differ in this respect.

37. The Court does not credit the hearing testimony disavowing BCHK's ownership of the myTECHNIC and Africa World Airlines share grants. BCHK bore the burden of establishing subject-matter jurisdiction and was not entitled to favorable inferences, ECF No. 178, at 4, yet it withheld the documents that would have resolved the question. The Court finds that BCHK continued to hold those share grants, and in any event retained ongoing consultancy rights in connection with them.

38. BCHK held other investment assets as well. BCPNV's Forms 5471 report BCHK investments in ten entities, including Cayenne Pepper Productions, Ltd., a film production company owned by Mr. Bhise's wife. DX-K. Mr. Bander testified on direct examination that these positions "could" represent loans receivable rather than equity, Tr. 91:21–92:11, but

conceded on cross-examination that the filings do not indicate which, Tr. 124:11–16. The distinction does not matter here: a loan receivable is itself a continuing asset, and its repayment is continuing corporate activity. See Tr. 114:12–115:14. Several of these positions, including Cayenne Pepper Productions, were materially paid down after 2018. DX-K.

39. BCHK had no presence in Hong Kong when this case was filed in 2024.

40. Mr. Yan moved to Hong Kong in early 2011 to establish BCHK and served as its senior-most executive there. Tr. 226:5–227:1; see also Tr. 7:19–22. He left Hong Kong in the fall of 2018 and relocated to London. Tr. 238:3–6. Mr. Yan testified he had no continuing role in BCHK's day-to-day affairs after he moved to London. Tr. 238:15–17.

41. After Mr. Yan's departure in 2018, BCHK's only remaining personnel based in Hong Kong were two low-level accounting staff, Jenny Chan and Kevin Tong. Tr. 76:14–25. Tong's employment was terminated in 2019, and Chan's employment was terminated in December 2020. Tr. 19:19–22; 72:8–11; 77:7–16.

42. However, after BCHK ceased to have any presence in Hong Kong, BCHK continued to operate from New York.

43. Mr. Bhise directed BCHK's affairs from New York. He served as BCHK's chief executive officer and was its ultimate beneficial owner. Tr. 151:22–152:6; 201:9–18. He maintains a residence in New York City

and works from an office on East 52nd Street in Manhattan when he is in New York. Tr. 6:7–15.

44. BCHK's other senior personnel were also based in New York. Its general counsel, Rinarisa Coronel De Fronze, acted as counsel to both BCHK and BCP, Tr. 200:25–201:4; was listed at a New York address in the notice provisions of the 2019 agreements, Tr. 170:7–10; 171:10–12; 173:17–21; and corresponded on Bravia Capital letterhead bearing the 445 Park Avenue address, Tr. 223:12–224:2; DX-RR. Mr. Bander testified that his accounting firm's principal office was in New York and that he signed BCHK's Hong Kong tax filing at his New York offices. Tr. 126:20–127:16. Aditya Bhise, who executed the 2019 agreements on BCHK's behalf, lived in New York in 2019. Tr. 167:22–168:9.

45. Those individuals conducted BCHK's business from New York. Mr. Bhise and Ms. De Fronze negotiated the 2019 agreements from New York. Tr. 144:15–23; 223:12–224:10; DX-L; DX-RR. Mr. Bander made payments on BCHK's behalf, including payments relating to the Sinoceanic transactions from BCHK's bank account, Tr. 82:21–24; 117:16–18, and became the custodian of BCHK's corporate records after 2020, Tr. 72:5–14; 74:9–11; 103:10–19; DX-K.

46. Mr. Bhise negotiated the 2019 agreements in person in New York, including with his HNA counterparty, Daniel Chen, who was also based in New York. Tr. 144:16–23; 214:8–11; DX-V, at 2; DX-W, at 2.

47. Aditya Bhise, who lived in New York, executed the 2019 agreements on BCHK's behalf. Tr. 167:22–168:9; 171:19–21; 175:1–4; 180:18–22. Each agreement contains New York notice, choice-of-law, and venue provisions. Tr. 170:1–180:17.

48. BCHK used its New York address in the course of that business. The signature block of every email Mr. Bhise sent in connection with the negotiations contained the Bravia logo and the New York office address; until March 2019, it also listed the Suite 3301 Hong Kong address. DX-L; DX-P; DX-V; DX-W, at 3. Six days before the August 20, 2019 closing, Ms. De Fronze transmitted original signature pages to Seaco Global Limited on Bravia Capital letterhead bearing the 445 Park Avenue address. DX-RR; Tr. 222:16–224:2.

49. In verified interrogatory responses served in June 2025, before the defendants raised their jurisdictional challenge, BCHK identified only two persons with relevant knowledge: Mr. Bhise, identified as BCHK's president and chief executive officer, and Angela Lu, identified as BCHK's general counsel. BCHK listed 150 East 52nd Street, New York, New York as the place of employment for both Mr. Bhise and Ms. Lu. DX-KK, No. 2;

Tr. 139:14–140:4; 152:11–16. Ms. Lu's predecessor worked from BCHK's New York office at 445 Park Avenue. Tr. 170:7–10; 200:25–201:1; 223:12–25.

50. BCHK's vendors likewise treated New York as BCHK's address. Mr. Bander's accounting firm addressed its invoice to "Bravia Capital Hong Kong" and sent it to 445 Park Avenue. DX-LL; Tr. 118:21–119:1.

51. Mr. Bhise and Mr. Bander each testified that BCHK never maintained a New York office or any United States address. Mr. Bhise testified that the East 52nd Street office belongs to BCP, not BCHK, and that BCHK's relationship with BCP is "[n]one" other than a common ultimate beneficial owner. Tr. 6:11–24. Mr. Bander testified that BCHK "did not have an address at 445 Park Avenue" and never maintained any New York office. Tr. 104:5–19.

52. The Court does not credit that testimony. It cannot be reconciled with BCHK's own verified interrogatory responses listing a New York place of employment for both of the individuals BCHK identified as knowledgeable, with the invoice addressed to BCHK at 445 Park Avenue, with the letterhead and email signature blocks bearing BCHK's New York address, or with the 2019 agreements to which BCHK and BCP were co-parties.

53. The Court also does not credit Mr. Yan's testimony. BCHK never identified Mr. Yan in its initial disclosures or interrogatory responses and

never supplemented them to do so. See Fed. R. Civ. P. 26(e)(1)(A). Mr. Yan contradicted his deposition testimony concerning the share grants. Tr. 249:21–251:23. He contradicted himself at the hearing, testifying first that he had reviewed "the structure charts for Bravia and the agreements," Tr. 250:23–25, and then, moments later, that he had not reviewed the myTECHNIC share grant, Tr. 251:3–4. He could not recall what he had reviewed, when he reviewed it, whether it was in paper or electronic form, or what country he was in when he reviewed it. Tr. 251:5–23. He was also evasive on cross-examination concerning the timing of the Sinoceanic payments. Tr. 252:24–253:12; 255:7–25.

54. When BCHK filed this action in 2024, no BCHK officer or employee was located in Hong Kong. Mr. Bhise, BCHK's chief executive officer and ultimate beneficial owner, was in New York, as were BCHK's general counsel, its accountant and director, and the records of the corporation. New York was the place from which BCHK's officers directed, controlled, and coordinated its activities.

## CONCLUSIONS OF LAW

55. "The plaintiff bears the burden of proving [the Court's] subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

56. "[W]here jurisdictional facts are disputed, the [C]ourt has the power and the obligation to consider matters outside the pleadings, such as affidavits [and] documents, . . . to determine whether [subject-matter] jurisdiction exists." Parks v. Off. of Temp. & Disability Assistance, 675 F. Supp. 2d 440, 441 (S.D.N.Y. 2009). To that end, a district court "has the authority to order jurisdictional discovery to allow [] the opportunity to demonstrate [subject-matter] jurisdiction." Mills 2011 LLC v. Synovus Bank, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013).

57. As a corporation, BCHK is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

58. The Supreme Court's decision in Hertz Corp. v. Friend provides that a corporation's principal place of business is its "nerve center"—in other words, "where a corporation's officers direct, control, and coordinate the corporation's activities." 559 U.S. 77, 92–93 (2010).[2]

---

[2] BCHK contends that, at the time of filing, it was an inactive corporation and that Hertz's nerve-center test is inapplicable. Instead, BCHK contends that the appropriate test is the "last transaction of business" test announced by the Court of Appeals in Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 141 (2d Cir. 1991). That test provides that "an inactive corporation's principal place of business is the [location] in which it last transacted business." Circle Indus. USA, Inc. v. Parke Constr. Grp., Inc., 183 F.3d 105, 108 (2d Cir. 1999). As a threshold matter, it is unclear whether the last-transaction-of-business test survives the Supreme Court's decision in Hertz. But, in any event, Hertz's nerve-center test is appropriate in this case

59. An inactive corporation is one that has entered the process of winding up its corporate affairs; a corporation that continues to receive revenues, enter contracts, pay expenses, and hold or manage assets has not done so. See Raine v. Entm't Acquisition Co., No. 95-cv-3193, 1996 WL 428394, at *4 (S.D.N.Y. July 31, 1996). A corporation's continuing receipt of substantial revenues, after its claimed cessation of business, is itself evidence that it remains active and has not entered the process of winding up. Id.

60. A corporation's continuing payment of salaries and operating expenses also tends to demonstrate continuing corporate activity. SEG Vanguard Gen. Corp. v. Ji, 195 F. Supp. 2d 564, 568–69 (S.D.N.Y. 2002).

61. The continuing holding and management of investment assets likewise constitutes continuing conduct of corporate affairs, not winding up. Peters v. Timespan Commc'ns, Inc., No. 97-cv-8750, 1999 WL 135231, at *4–5 (S.D.N.Y. Mar. 12, 1999).

62. As discussed above, BCHK continued to transact business after 2018, see supra ¶¶ 19–38, and Mr. Bhise, as well as other BCHK employees, primarily directed that business from New York, see supra ¶¶ 43–54. New

---

because, as discussed in the text, BCHK continued to operate as an active corporation past 2018, and at least through 2024, when this action was filed. Moreover, under the "last transaction of business" test, BCHK is still a New York citizen because, as discussed in the text, it continued to operate from New York after 2018.

York was therefore BCHK's "nerve center" and its principal place of business.

63. Because BCHK's principal place of business was New York at the time of filing, it is a citizen of New York for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). Defendants are also citizens of New York.

64. BCHK has failed to show by a preponderance of the evidence that complete diversity exists in this case pursuant to 28 U.S.C. § 1332(a).

65. The Court therefore lacks subject-matter jurisdiction to hear this case, and the previously entered judgment (ECF No. 93) is void.

## CONCLUSION

For the foregoing reasons, this case is **dismissed without prejudice** for lack of subject-matter jurisdiction. The judgment at ECF No. 93 is **vacated**. The Clerk is respectfully requested to enter judgment dismissing this case without prejudice. The Clerk is also requested to close all pending motions and to close this case.

**SO ORDERED.**

**Dated: New York, New York**
**September 7, 2026**

**John G. Koeltl**
**United States District Judge**